UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| ALBERTO HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 15-151-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WILLIAM GOINS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

Defendant Unlawful Narcotics Investigations, Treatment and Education, Inc. ("UNITE") has filed a motion to dismiss the claims that Plaintiff Alberto Harris has asserted against it. [Record No. 6]  With regard to the federal claims, UNITE argues that that it cannot be held liable under 42 U.S.C. § 1983 for allegations based on *respondeat superior* liability. [Record No. 6-1, pp. 4−6]  Further, it alleges that the plaintiff has failed to properly assert a policy or custom establishing liability under § 1983.  [Record No. 19, p. 8]  However, the plaintiff contends that *respondeat superior* liability is only one of the theories of recovery asserted against UNITE. [Record No. 18, pp. 12−15]

With respect to the plaintiff's state law claims, UNITE asserts that it is shielded from liability by governmental immunity. [Record No. 6-1, p. 6]  Conversely, Harris argues that private corporations such as UNITE are not entitled to the protections of governmental immunity. [Record No. 18, pp. 5−8]  Alternatively, the plaintiff contends that UNITE does

- 1 -

not meet the test for governmental immunity as set out in *Comair, Inc. v. Lexington-Fayette Urban Cnty. Airport Corp.*, 295 S.W.3d 91 (Ky. 2009).  [*Id.*, pp. 9−11]

For the reasons outlined below, UNITE's motion to dismiss will be granted regarding: (i) the federal constitutional claims under 42 U.S.C. § 1983 in Count I; (ii) the alleged due process violations asserted in Count II; (iii) the failure-to-intervene claim contained in Count III; (iv) the alleged Sixth Amendment violation outlined in Count IV; (v) the supervisory liability claim asserted in Count V; and (vi) the failure-to-act claim asserted in Count VII. UNITE's motion will be denied with respect to: (i) the malicious prosecution claim contained in Count I; (ii) the civil conspiracy claim under § 1983 set out in Count VI; and (iii) the state law claims outlined in Counts VIII through X.

## I.

Plaintiff Harris alleges that defendant-officers William Goins, Patrick Robinson, George Stewart, and Kevin Johnson conspired to violate his constitutional rights by manufacturing evidence and bringing false criminal charges against him.  [Record No. 1, ¶¶ 17, 24]  Specifically, he asserts that, in September 2010, Robinson and Goins agreed with Cristina Little, a criminal fugitive, to leave certain incriminating items at Harris' residence. [*Id.*, ¶ 24]  Thereafter, Harris asserts that Robinson offered Lonnie Philpot the opportunity to engage in a controlled buy in exchange for dismissal of a drug charge against him.  [*Id.*, ¶¶ 24−27]  Ultimately, Defendants Little and Philpot participated in a controlled buy while outfitted with an audio/video recording device.  [*Id.*, ¶¶ 28−29]  While these confidential informants ("CIs") claim that they bought a Xanax pill from Harris for $12.00, Harris asserts

that he did not participate in that drug transaction and does not appear in the recording. [*Id.*, ¶¶ 33−36]

Based on the CIs' report, Goins obtained a search warrant for Harris' residence and an arrest warrant for Harris. [*Id.*, ¶¶ 37−38] The officers executed the search warrant while Harris was not at the residence. [*Id.*, ¶ 41] Harris asserts that officers Goins and Johnson placed two $10.00 bills inside his wallet. [*Id.*, ¶ 45] Meanwhile, Goins and Robinson each recovered a pill bottle containing Xanax from the residence. [*Id.*, ¶¶ 47−48] Harris was arrested on September 16, 2010. [*Id.*, ¶ 50] And as a result of the items seized from his home, Harris was charged with two controlled substance offenses. [*Id.*, ¶ 51]

Harris claims that Goins then presented false testimony at the preliminary hearing, resulting in an invalid indictment of the grand jury. [*Id.*, ¶ 56] At that point, Harris had three charges against him, and his bond was set at $50,000. [*Id.*, ¶¶ 56−57] Consequently, he remained in jail for over a year until he made bail. [*Id.*, ¶ 59]

Harris also contends that he was assaulted by staff while being held at the Clay County Detention Center. [*Id.*, ¶ 60] As a result, he was transferred to a detention center in Harlan County. [*Id.*, ¶ 62] The underlying charges against Harris were eventually dismissed because the circuit court lacked jurisdiction; however, he remained in jail due to a charge against him filed by a corrections officer. [Record Nos. 1, ¶¶ 64−65; 1-4] That charge was also dismissed. [*Id.*, ¶ 66]

In August 2011, Goins again the case to the grand jury, again allegedly presenting false testimony. [Record No. 1, ¶ 67−68] Although Harris was placed on home-arrest for approximately four months, he returned to the Harlan County Detention Center in March

- 3 -

2012. [*Id.*, ¶¶ 69−72]  Next, he was moved to the Kentucky Correctional Psychiatric Center where he underwent mental health evaluations to determine his competency to stand trial. [*Id.*, ¶¶ 73−77]  On May 23, 2013, Harris was released from jail.  [*Id.*, ¶ 79]  After several continuances, Harris appeared for his jury trial but the Commonwealth failed to present any witnesses against him, resulting in dismissal of the charges.  [*Id.*, ¶¶ 80, 85−87]

Harris further alleges that his previously-seized vehicle had been damaged when he retrieved it from the impound lot.  [*Id.*, ¶ 92]  Harris asserts that he was wrongfully incarcerated for 895 days and that he suffered abuse at the hands of prison officials and employees during that time.  [*Id.*, ¶¶ 94−100]  Based on these allegations, Harris asserts a variety of federal and state claims against the defendant-officers, the confidential informants, the City of Manchester, Clay County, UNITE, and unnamed law enforcement officers and their supervisors.  In Count I, Harris contends that the individual defendants and UNITE violated his Fourth, Fifth, Sixth, and Fourteenth Amendment rights under the United States Constitution and 42 U.S.C. § 1983.  [Record No. 1, ¶¶ 108−16]  Count I also includes a malicious prosecution claim asserted under Kentucky common law.  [*Id.*, ¶ 112]  In Count II, Harris alleges that these same defendants violated his Fourteenth Amendment due process rights.  [*Id.*, ¶¶ 117−25]  Count III appears to be a failure-to-intervene claim asserted under 42 U.S.C. § 1983, but only against the City of Manchester.  [*Id.*, ¶¶ 126−33]  Similarly, Count VII appears to assert a claim of failure-to-act under § 1983, but only against the City of Manchester and Clay County.  [*Id.*, ¶¶ 152−57]

In Count IV, Harris contends that his Sixth Amendment right to a speedy trial was violated by the individual defendants and UNITE.  [*Id.*, ¶¶ 134−38]  Next, in Count V, Harris asserts a claim for supervisory liability claim under § 1983 against the supervisors of Clay County, UNITE, and the Manchester City Police.  [*Id.*, ¶¶ 139−47]  Harris further alleges in Count VI that the defendants engaged in a conspiracy to deprive him of his constitutional rights under § 1983.  [*Id.*, ¶¶ 148−51]  Finally, Counts VIII through X contain several state law claims asserted against the defendants.  [*Id.*, ¶¶ 158−73]

The officers, the City of Manchester, and Clay County have filed their Answers to the Complaint.  [Record Nos. 4; 17]  UNITE filed the present motion to dismiss on September 25, 2015, claiming that the plaintiff cannot assert vicarious liability claims against it under § 1983.  [Record No. 6-1, p. 2]  It further contends that the state law claims are barred by governmental immunity.  [*Id.*]  For the reasons summarized below, UNITE's motion will be granted, in part, and denied, in part.

## II.

When evaluating a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must determine whether the Complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  The plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  Thus, although the Complaint need not contain "detailed factual allegations" to survive a motion to

- 5 -

dismiss, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (internal quotation marks and alteration omitted).

## III.

### A.      Harris' 1983 Claims

Defendant UNITE argues that Harris' constitutional claims depend on a *respondeat superior* theory of liability which is not permitted under 42 U.S.C. § 1983. [Record No. 6-1, p. 4]  However, in his response, Harris asserts that his conspiracy and supervisory liability claims do not rely on a vicarious liability theory. [Record No. 18, pp. 12–14]  Further, he alleges that his § 1983 claims against UNITE also survive under a failure-to-train theory. [*Id.*, pp. 14–15]  Lastly, Harris argues that § 1983 permits claims of *respondeat superior* against private corporations. [*Id.*, p. 15]

To state a claim for relief under 42 U.S.C. § 1983, a plaintiff must establish that a person acting under color of state law deprived him of a right secured by the Constitution or the laws of the United States. *Flagg Bros., Inc. v. Brooks*, 436 U.S. 149, 155 (1978).  A private entity that contracts with the state to perform a traditional state function acts under color of state law. *West v. Atkins*, 487 U.S. 42, 54 (1988).  However, "[a] defendant cannot be held liable under section 1983 on a *respondeat superior* or vicarious liability basis." *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (citing *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978); *Harvey v. Harvey*, 949 F.2d 1127, 1129–30 (11th Cir. 1992)).  While *Monell* dealt with a municipal corporation, the Sixth

- 6 -

Circuit has held that *Monell* applies to private corporations as well. *Street*, 102 F.3d at 818; *Savoie v. Martin*, 673 F.3d 488, 494 (6th Cir. 2012).

Instead, the plaintiff must allege that a policy or custom of the defendant corporation caused the deprivation at issue. *Savoie*, 673 F.3d at 494. If the plaintiff asserts that a policy caused the violation, he or she must identify that particular policy and allege facts indicating that the policy was the "moving force" behind the violation. *See Heyerman v. Cnty. of Calhoun*, 680 F.3d 642, 648 (6th Cir. 2012); *Ghaster v. City of Rocky River*, No. 1:09-cv-2080, 2010 WL 2802685, at *7 (N.D. Ohio May 12, 2010) (dismissing *Monell* claim where plaintiff failed to allege facts indicating that the city had a policy of depriving citizens of their First or Fourth Amendment rights).

However, if a plaintiff claims that a custom of "inaction" exists, he must allege that the municipality's or corporation's failure to train evidences "deliberate indifference" towards the plaintiff and those similarly situated. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389 (1989). More specifically, the plaintiff must plead: (i) a clear and persistent pattern of unconstitutional conduct by the corporation's agents; (ii) the corporation's actual or constructive notice of that conduct; (iii) the corporation's tacit approval of that conduct; and (iv) that the failure to train was the moving force behind the conduct at issue. *D'Ambrosio v. Marino*, 747 F.3d 378, 387−88 (6th Cir. 2014) (affirming district court's grant of judgment on the pleadings to defendant where complaint failed to properly allege custom-of-inaction theory). With regard to the first element, a clear and persistent pattern refers to "prior unconstitutional actions" unrelated to the matter at hand. *Miller v. Calhoun Cnty.*, 408 F.3d 803, 815 (6th Cir. 2005) (affirming summary judgment for the county where plaintiff could

not show overall pattern of mistreatment of detainees); *Stemler v. City of Florence*, 126 F.3d 856, 865 (6th Cir. 1997) (affirming summary judgment for the defendant where plaintiffs could not identify any prior instances of misconduct in the sheriff's department).

### 1.      Count I

In Count I, Harris asserts violations of his Fourth, Fifth, Sixth, and Fourteenth Amendment rights by UNITE under 42 U.S.C. § 1983.   Specifically, he contends that UNITE is liable "through its agents/employees."   [Record No. 1, ¶ 109]   Thus, as pleaded, Count I relies on a theory of *respondeat superior* liability against UNITE.   Because claims premised on *respondeat superior* liability are not permitted under § 1983, the federal constitutional violations alleged in Count I will be dismissed, as they pertain to UNITE.[1] *Savoie*, 673 F.3d at 494.

### 2.      Count II

Unlike Count I, Count II is not expressly limited to *respondeat superior* liability.   For example, the plaintiff states that the "[d]efendants deprived Harris of liberty without due process of law" and that their "intentional, reckless, or deliberately indifferent acts and omissions" caused the deprivation at issue.   [Record No. 1, ¶¶ 118, 122]   Therefore, the question presented is whether Harris has properly alleged corporation liability under § 1983.

Harris does not highlight a particular policy constituting a moving force behind the alleged violation.   *See Heyerman*, 680 F.3d at 648; *Ghaster*, 2010 WL 2802685, at *7.

---

[1]      Harris does not appear to allege that any UNITE policy or custom caused the violations at issue in Count I.

However, a liberal construction of his Complaint[2] demonstrates that Harris attempts to plead that a custom of inaction resulted in the violation of his Fourteenth Amendment due process rights. For instance, the reference to "deliberate indifference" comports with one of the pleading requirements in *City of Canton*, 489 U.S. at 389. [Record No. 1, ¶ 122] But Harris fails to allege a clear and persistent "office-wide pattern" of illegal conduct—his allegations are limited to the actions of Robinson, Goins, and a confidential informant. *D'Ambrosio*, 747 F.3d at 387. [Record No. 1, ¶¶ 117–25] In other words, Harris' allegations focus only on the defendants' actions towards him. He does not assert that prior unconstitutional actions were taken throughout UNITE's history. *Miller*, 408 F.3d at 815. For example, the plaintiff does not claim that the officers and UNITE similarly fabricated evidence against and maliciously prosecuted other defendants.

Harris does point to his prior lawsuit against Robinson as an indication of prior unconstitutional actions by one of UNITE's agents. [Record No. 1, ¶ 18] Notwithstanding this assertion, one prior instance of misconduct does not establish a clear and persistent pattern of misconduct. *See Stemler*, 126 F.3d at 865 (finding that city's awareness of one sexual harassment complaint against an employee did not make it "plainly obvious" that he would falsely arrest a woman based on her sexual orientation); *Alphabet v. City of Cleveland*, No. 1:05-cv-1792, 2006 WL 3241785, *13 (6th Cir. Nov. 7, 2006) (finding six complaints to police department over six years to be insufficient to show a pattern of misconduct). Further,

---

[2]     Initially, the plaintiff asserted that UNITE was liable under a *respondeat superior* theory. [Record No. 1, ¶ 8] Throughout his Complaint, other theories are developed. Because of liberal pleading standards, the Court has construed the allegations in Harris' favor. *See Twombly*, 550 U.S. at 556.

misconduct by an agent nine years prior to the incident at hand would not put an employer on notice of a "substantial risk of serious harm." *Alphabet*, 2006 WL 3241785 at *14.

Even if the allegations in the Complaint were sufficient to show a clear and persistent office-wide pattern of unconstitutional activity, the links between UNITE and the individual defendants are far too attenuated to support an allegation that UNITE had actual or constructive notice of the illegal conduct and tacitly approved of it. *D'Ambrosio*, 747 F.3d at 387.[3] Even though the plaintiff asserts that Robinson was heavily involved in the alleged conspiracy, UNITE is only linked to Robinson as his "employer or joint employer." [Record No. 1, ¶ 7] With respect to Harris' prior suit against Robinson, Harris does not argue that UNITE was aware of this suit, nor did the suit occur during Robinson's employment with UNITE. [Record No. 1, ¶¶ 6, 18–19] Because Harris fails to properly plead a custom-of-inaction theory against UNITE under § 1983, this claim will be dismissed, as it pertains to UNITE.

### 3.    Count III

The failure-to-intervene allegation in Count III appears to be limited to the City of Manchester. For example, the Complaint states that "[t]he misconduct described in this Count was undertaken pursuant to a routine practice of the Manchester Police Department to pursue wrongful convictions . . ." [Record No. 1, ¶ 130] Next, Harris labels the practice a

---

[3]    Harris claims that Goins is also linked to UNITE *via* a reimbursement of expenses for the underlying investigation. [Record No. 18, p. 12] However, this connection does not indicate that UNITE had any notice of illegal conduct or approved such conduct. *See D'Ambrosio*, 747 F.3d at 387. Likewise, the fact that UNITE paid CI Little's fee does not suggest UNITE's notice or tacit approval of illegal conduct. [*Id.*] Thus, even if the Court looks past the Complaint, Harris has not properly alleged sufficient facts to support a failure-to-train claim against UNITE under 42 U.S.C. § 1983.

"*de facto* policy" of "the Manchester Police Department."  [*Id.*, ¶ 131]  Finally, he avers that

the misconduct "was tacitly ratified by policy makers for the municipal Defendants with final

policymaking authority."[4]  [*Id.*, ¶ 133]  Because Count III describes the City of Manchester's

liability under a municipal policy or custom theory, it does not pertain to UNITE.  To the

extent the plaintiff now claims that the failure-to-intervene claim applies to UNITE, it will be

dismissed as to that defendant.

### 4.    Count IV

The Sixth Amendment violation asserted in Count IV, like the constitutional

violations asserted in Count II, is premised on a corporate custom theory under 42 U.S.C. §

1983.  The Complaint states that UNITE "acted with deliberate indifference to Harris'

constitutional rights, which resulted in the deprivation of Harris' clearly established

constitutional rights."  [Record No. 1, ¶ 138]  Again, a mere reference to "deliberate

indifference" is insufficient for the claim to survive a motion to dismiss.  This claim against

UNITE will be dismissed because the plaintiff has failed to plead the existence of a clear and

persistent office-wide pattern of illegal conduct by that entity.  *D'Ambrosio*, 747 F.3d at 387;

*Miller*, 408 F.3d at 815; *Stemler*, 126 F.3d at 865.

### 5.    Count V

The plaintiff argues that the doctrine of *respondeat superior* is not implicated in §

1983 actions alleging supervisory liability.  [Record No. 18, p. 12]  However, UNITE

---

[4]    The language in this paragraph suggests that Harris is aware of the pleading requirements
for municipal liability in a failure-to-act theory under § 1983.  This language does not appear in
Harris' references to UNITE, suggesting that he did not intend to assert a failure-to-act theory
against the entity.

contends that the supervisory liability claim is really a vicarious liability claim in disguise. [Record No. 19, p. 8]

A supervisor is liable for his inaction "where he or she knew or should have known of widespread violations by subordinates." *Leach v. Shelby Cnty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989). Supervisory liability "must be based on more than merely the right to control employees" and cannot be based on "simple negligence." *Hays v. Jefferson Cnty., Ky.*, 668 F.2d 869, 872 (6th Cir 1982), *cert. denied*, 459 U.S. 833 (1982); *Daniels v. Williams*, 474 U.S. 327, 330−31 (1986). In other words, a plaintiff must show that a "supervisory official at least implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate." *Taylor v. Mich. Dep't of Corr.*, 69 F.3d 76, 81 (6th Cir. 1995) (quoting *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984)).

As an initial matter, the plaintiff has properly asserted a claim of supervisory liability because he alleges that the supervisors "knew or should have known that their subordinate officers and/or investigators were maliciously prosecuting civilians . . ." *See Leach*, 891 F.2d at 1246. [Record No. 1, ¶ 141] Further, Harris links the defendants' lack of supervision to the deprivation of his "clearly established Constitutional rights." [*Id.*, ¶ 142] He also asserts more than simple negligence. *See Hays*, 668 F.2d at 872. [*Id.*, ¶ 143] In addition, Harris avers that the defendant-supervisors failed to supervise by "authorizing, approving, facilitating, or directly participating in their subordinates' misconduct." *See Taylor*, 69 F.3d at 81. [*Id.*]

However, the plaintiff's claim appears to be limited to supervisory *officials*, rather than asserted against UNITE as a separate entity. For example, the Complaint alleges that,

"Defendants, including Robinson, Johnson, and Unnamed Supervisors, were at all relevant times *supervisory personnel with (or acting for)* Clay County and/or UNITE and/or the Manchester City Police . . ." [*Id.*, ¶ 140, emphasis added]  Moreover, it is unclear whether a plaintiff may assert a claim under § 1983 against an entity under a *pure* supervisory liability theory.[5]  Instead, the claim against UNITE supervisors appears to reach the corporation only through a *respondeat superior* theory.   Thus, this claim cannot survive with respect to UNITE.  *Savoie*, 673 F.3d at 494.

    But even if the Court construed Count V as containing a failure-to-train theory of liability against UNITE, the claim would still fail.  As mentioned above, the plaintiff only claims that one "prior unconstitutional action" was performed by an agent of UNITE. [Record No. 1, ¶ 18]  Therefore, because Harris has not alleged that UNITE had notice of a clear and persistent pattern of misconduct by its agents, his failure-to-train theory cannot withstand a motion to dismiss.  *D'Ambrosio*, 747 F.3d at 387; *Stemler*, 126 F.3d at 865.

### 6.   Count VI

    In Count VI, Harris claims that all defendants engaged in a civil conspiracy against him in violation of 42 U.S.C. § 1983.  [Record No. 1, ¶¶ 148−51]  He contends that § 1983 permits civil conspiracy claims against entities.  [Record No. 18, p. 12]  However, UNITE argues that a civil conspiracy requires an agreement of individuals, meaning that Harris is again disguising a vicarious liability claim under a different label.  [Record No. 19, p. 5]

---

[5]     *See, e.g.*, *Daniels*, 474 U.S. at 330−31 (claim against deputy sheriff); *Taylor*, 69 F.3d at 80−81 (claim against warden); *Hays*, 668 F.2d at 871−72 (claim against county, chief of police department, and deputy chief of police department treated under a combination of supervisory liability and failure-to-train theories); *Leach*, 891 F.2d at 1246 (claim against county sheriff).

"A civil conspiracy is an agreement between two or more persons to injure another by unlawful action." *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985).  For such a claim to survive a motion to dismiss, a plaintiff must allege: (i) the existence of a single plan; (ii) that the co-conspirators shared in a general conspiratorial objective; and (iii) an overt act in furtherance of the conspiracy that caused injury to the plaintiff.  *Id.* at 944.  "[C]onspiracy claims must be pled with some degree of specificity. . ." *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).  Where the plaintiff asserts that the defendants had a "shared plan" and took actions in furtherance of that conspiratorial plan, the allegation will survive a motion to dismiss.  *See Huffer v. Bogen*, 503 F. App'x 455, 462 (6th Cir. 2012) (dismissing conspiracy claim because plaintiff failed to include allegations regarding an agreement or shared plan).

If a plaintiff's conspiracy claim against an entity is premised on the actions of that entity's officers, then it is really a *respondeat superior* claim.  However, if the plaintiff claims that the entity *itself* participated in the conspiracy, then the conspiracy claim survives under § 1983.  *Memphis, Tenn. Area Local, Am. Postal Workers Union v. City of Memphis*, 361 F.3d 898, 904 (6th Cir. 2004); *see also Jackim v. Sam's East, Inc.*, 378 F. App'x 556, 562–63 (6th Cir. 2010).

Here, the Complaint states, "Defendants agreed among themselves and with other individual officers, supervisors, and others . . . to act in concert in order to deprive Harris of his clearly established constitutional rights."  [Record No. 1, ¶ 149]  Thus, Harris alleges the existence of a shared plan with a general conspiratorial objective.  *Gutierrez*, 826 F.2d at 1538; *Huffer*, 503 F. App'x at 462.  Next, the Complaint refers to "overt acts," such as the defendants "intentionally concealing or destroying material, exculpatory, and impeachment

- 14 -

evidence." [*Id.*, ¶ 150]  Count VI states that it incorporates more specific allegations described earlier in the pleading.  [*Id.*, ¶ 148]  As a result, Harris identifies several alleged overt acts in furtherance of the conspiracy.  *Hooks*, 771 F.2d at 944; *Gutierrez*, 826 F.2d at 1538.  In addition, he contends that the overt acts "proximately and directly caused Harris' arrest, malicious prosecution, wrongful incarceration, and deprivation of liberty without due process of law . . ." [*Id.*, ¶ 151]  Therefore, Harris has satisfied the pleading requirements for civil conspiracy under § 1983.  *Hooks*, 771 F.2d at 944.

However, UNITE contends that, under *Monell*, 436 U.S. at 691, a plaintiff may not assert a civil conspiracy claim against an entity.  [Record No. 19, p. 6]  The defendant seems to rely on the assumption that § 1983 conspiracy claims require *individuals* rather than corporate entities to form the underlying conspiratorial agreement.  [*Id.*]  But UNITE has provided no authority for this assertion.  Instead, *Memphis* supports the proposition that entities can participate in civil conspiracies under § 1983, and that this type of conspiracy claim does not rely on a *respondeat superior* theory.[6]  361 F.3d at 904.  As a result, Count VI will survive the present motion to dismiss.

### B.    State Law Claims

UNITE also asserts that governmental immunity shields it from liability for the plaintiff's state law claims, which are found in Count I and Counts VIII through X.  [Record Nos. 1, ¶¶ 112, 152–73; 19, p. 6]  In his response, Harris argues that UNITE's motion to

---

[6]    UNITE argues that *Memphis* is not consistent with *Monell*.  [Record No. 19, p. 6]  However, *Memphis* addressed *Monell*, distinguishing conspiracy claims premised on the agreement of a defendant's agents from those premised on the agreement of the defendant itself.  *Memphis*, 361 F.3d at 904.

dismiss is premature because it assumes facts that are in dispute and because the governmental immunity question is fact-intensive.  [Record No. 18, p. 3]

Immunity from state law claims is governed by state law.  *Crawford v. Lexington-Fayette Urban Cnty. Gov't*, Civil Action No. 06-299-JBC, 2007 WL 101862, *3 (E.D. Ky. Jan. 10, 2007) (citing *Benning v. Bd. of Regents of Regency Univ.*, 928 F.2d 775, 777 (1991)).  In Kentucky, a private corporation is entitled to governmental immunity if its origin indicates that it is an agency or alter ego of a clearly immune parent and if it performs a "function integral to state government."  *Comair, Inc. v. Lexington-Fayette Urban Cnty. Airport Corp.*, 295 S.W.3d 91, 99 (Ky. 2009); *Transit Auth. of River City v. Bibelhauser*, 432 S.W.3d 171, 174 (Ky. Ct. App. 2013).  In *Comair*, an airport board was found to be immune from suit because the county government was the "parent" entity of the board, and the board's maintenance of air transportation infrastructure was considered a function integral to state government.  295 S.W.3d at 100−102.  The court in *Comair* also concluded that a non-profit airport corporation was immune because it acted as the alter-ego of the airport board.  *Id.* at 103.

In other words, "an entity's immunity status depends to some extent on the immunity status of the parent entity."  *Id.* at 99; *see also Autry v. Western Kentucky Univ.*, 219 S.W.3d 713, 719 (Ky. 2007).  Recently, however, courts have focused on the second part of this analysis.  "An analysis of what an agency actually does is required to determine its immunity status."  *Autry*, 219 S.W.3d at 717.  Functions integral to state government include police work, public education, corrections, tax collection, and public highway work.  *Comair*, 295 S.W.3d at 99.

UNITE is not entitled to governmental immunity. While the organization might perform a function integral to state government, it does not owe its origin to some clearly immune entity. As a result, UNITE is distinguishable from the airport board and corporation in *Comair*. There, the Supreme Court of Kentucky thoroughly discussed the airport board's origin. For example, the court noted that Ky. Rev. Stat. § 183.132(1) provided that a city, a county, or a city and county acting jointly could create an airport board. *Comair*, 295 S.W.3d at 100. Next, the court highlighted that the mayor sat on the board and appointed some of its members. *Id.* (referring to Ky. Rev. Stat. § 183.132(5)(a)). The other members were appointed by the county judge or executive. *Id.* (referring to Ky. Rev. Stat. § 183.132(5)(b)). Also, the board's accounting books were subject to examination by the legislative body that created it. *Id.* (referring to Ky. Rev. Stat. § 183.132(15)). Further, the county government could exercise regulatory control over the board. *Id.* at 101.

The court held that the airport corporation was an "alter-ego" of the board because it was formed according to board and county government resolutions, and its assets reverted to the board and government upon dissolution. *Id.* at 102−03. In addition, the corporation's articles of incorporation were amended by airport board and county resolutions. *Id.* at 103. Moreover, all excess revenue was used for the benefit of the board and county government. *Id.* Finally, "[m]ost telling, however, is that . . . the Corporation was created to issue bonds to finance airport improvements. Creation of a new entity by an otherwise immune entity simply to take advantage of a funding mechanism does not cut off the immunity defense for the new entity." *Id.* Because the corporation's parents were the airport board and county

government, and because the corporation performed a financial function on behalf of those entities, the court held that the law accorded it the same immunity. *Id.*

The Interlocal Cooperation Act, Ky. Rev. Stat. §§ 65.210–.300, provides the statutory framework for public agencies to share revenues by entering into interlocal agreements. Ky. Rev. Stat. § 65.245. Such agreements may establish separate legal or administrative entities. Ky. Rev. Stat. § 65.250(1)(b). The Department for Local Government must approve these agreements before they enter into force. Ky. Rev. Stat. § 65.260(2). UNITE and several Kentucky counties have entered into their third interlocal agreement to empower "local communities to combat illegal drug use through a comprehensive campaign of investigation, treatment and education," which includes police work. [Record No. 18-8, pp. 1–10]

Unlike the airport board in *Comair*, UNITE is not an entity created *via* statute. *See Comair*, 295 S.W.3d at 100. It is not a creature of Ky. Rev. Stat. § 65.250(1)(b) and the interlocal agreements; instead, it existed prior to the first interlocal agreement. In fact, UNITE reserved the right to withdraw from the most recent interlocal agreement within the first 90 days of its execution, indicating that the agreement could exist without UNITE. [Record No. 18-8, p. 4]

Further, UNITE was not created by a county government. Instead, it was incorporated by Bob Mitchell and four of the initial directors, who did not appear to be acting in an official capacity in signing the Articles of Incorporation. [Record No. 18-6, p. 3] Additionally, UNITE's Articles do not provide that a member of government selects the board of directors or sits on the board. [*See id.*, pp. 1–3] On the other hand, in *Comair*, the mayor appointed the airport board members and sat on the board. 295 S.W.3d at 100.

- 18 -

Moreover, no county authority exercises regulatory control over UNITE's board of directors, and the accounting books are not subject to examination by such an authority. *See Comair*, 295 S.W.3d at 101. For instance, the articles state that the directors have "full authority" to regulate the corporation's internal affairs. [Record No. 18-6, p. 2] In fact, UNITE, alone, supervises its administrative personnel and "Law Enforcement Director." [Record No. 18-8, p. 4] In addition, law enforcement officers working under UNITE report to UNITE personnel and follow UNITE policies. [*Id.*, p. 5] And property purchased by UNITE for its Task Force remains the property of UNITE. [*Id.*, p. 7]

Likewise, UNITE is dissimilar to the airport corporation in *Comair*. While both UNITE and the airport corporation have non-profit status, UNITE was not created pursuant to board and county government resolutions. *See Comair*, 295 S.W.3d at 102–03. [*See, generally,* Record No. 18-6.] Additionally, its assets do not originate from the county government, nor do they revert there upon dissolution. [*See, e.g.*, Record No. 18-8, p. 1.] Instead, the funds may be distributed to a succeeding non-profit with similar aims. [Record No. 18-6, p. 2] Overall, it does not appear that the counties in the interlocal agreement created UNITE as their alter-ego.

UNITE is also distinguishable from the corporations in *Autry*, 219 S.W.3d 713, and *Northern Kentucky Area Planning Comm'n v. Cloyd*, 332 S.W.3d 91 (Ky. Ct. App. 2010). In *Autry*, Western Kentucky University, a state agency, created the Student Life Foundation ("SLF"). 219 S.W.3d at 719. The Supreme Court of Kentucky held that the SLF was an alter-ego of the university because of the university's control. *Id.* For example, the Management Agreement provided that most of the operational functions of the SLF were

- 19 -

assigned to the university.  *Id.*  Thus, the court found that SLF was merely an agent of the university, making it subject to "official immunity" through the university's governmental immunity.  *Id.*  In this case, UNITE is not subject to any state governmental authority's control.  On the contrary, law enforcement personnel on the joint Task Force are subject to its policies.  [Record No. 18-8, p. 5]  Further, UNITE has an existence separate from its duties under the interlocal agreements, whereas the SLF had "no truly independent existence" from the university in *Autry*, 219 S.W.3d at 719.

Finally, in *Cloyd*, the Court of Appeals of Kentucky found that an area planning commission was entitled to governmental immunity because it operated "under the authority of the state and with the consent of member counties."  332 S.W.3d at 96.  In addition, the planning commission was created by member cities and counties.  *Id.* at 95.  As explained above, UNITE does not operate under the authority of counties, nor was it created by them.  Instead, the *interlocal agreement into which UNITE entered* was created by cities and counties.  Because UNITE does not originate from an entity entitled to governmental immunity, it is not immune from Harris' state law claims against it.  *Transit Auth. of River City*, 432 S.W.3d at 174.

To the extent UNITE requests dismissal of the malicious prosecution claim in Count I and the claims in Counts VIII through X on the grounds of governmental immunity, its request will be denied.

## IV.

Based upon the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

- 20 -

1.      Defendant UNITE's motion to dismiss [Record No. 6] is **GRANTED** with respect to the following claims and parties:

       a.      the plaintiff's claims of constitutional violations under 42 U.S.C. § 1983 in Count I, as they pertain to UNITE;

       b.      the plaintiff's claims contained in Counts II through V, as they pertain to UNITE; and

       c.      the plaintiff's claims contained in Count VII, as it pertains to UNITE.

2.      Defendant UNITE's motion to dismiss [Record No. 6] is **DENIED** with respect to the remaining claims.

This 29th day of December, 2015.

Signed By:

_Danny C. Reeves_   DCR

**United States District Judge**

- 21 -