UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| ALBERTO HARRIS, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 15-151-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| WILLIAM GOINS, et al., | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of a motion filed by Oscar G. House, Circuit Court Judge for the 41st Judicial Circuit of the Commonwealth of Kentucky, seeking to quash and/or modify the subpoena served on him by Plaintiff Alberto Harris. [Record No. 50]  A hearing was held on this motion on August 25, 2016.  For the reasons stated below, the motion will be granted.

## I.      Background

Judge House moves to quash the subpoena pursuant to Fed. R. Civ. P. 45(d)(3)(A)(iii) and Fed. R. Civ. P. 45(e)(2)(A) which require, in part, that the court must quash or modify a subpoena that requires disclosure of privileged or other protected matters (if no exception or waiver applies).  Judge House claims judicial deliberative privilege.  Additionally, he has filed an affidavit attesting that he has no notes or files responsive to the subpoena.  [Record No. 2, Exhibit 2]

## II.     Standard

There is limited authority regarding judicial deliberative immunity.  As other courts have noted, this lack of express authority is "undoubtedly because its existence and validity has been so universally recognized."  *Kosiorek v. Smigelski*, 54 A.3d 564, 578 n. 19 (Conn. App. Ct. 2012) (quoting *Nixon v. Sirica*, 487 F.2d 700, 740 (D.C. Cir. 1973) (MacKinnon, J., concurring in part and dissenting in part)).  The Supreme Court addressed the privilege briefly in *United States v. Morgan*, 313 U.S. 409 (1941).  In *Morgan*, the Court likened an examination into the decision making process of the Secretary of Agriculture (including the extent and manner of his study, as well as the process for reaching his conclusion) to that of a judge, stating that "such an examination of a judge would be destructive of judicial responsibility." *Id.* at 422.  The Court went on the hold that "[j]ust as a judge cannot be subjected to such a scrutiny … so the integrity of the administrative process must be equally respected." *Id.* (internal citations omitted).

Most recently, the Supreme Judicial Court of Massachusetts addressed the issue.  In a suit filed by a district attorney against a judge (alleging multiple violations of the code of judicial conduct) the court held:

> [T]he need to protect judicial deliberations has been implicit in our view of the nature of the judicial enterprise since the founding.  Consequently, we join other courts, State and Federal, that, when faced with attempts by third parties to extract from judges their deliberative thought processes, have uniformly recognized a judicial deliberative privilege.

*In the Matter of Enforcement of Subpoena*, 972 N.E.2d 1022, 1032 (Mass. 2012) (listing numerous authorities recognizing judicial deliberative immunity).

Despite this universal recognition of a deliberative privilege, a split exists regarding whether it is qualified or absolute.  The Supreme Judicial Court of Massachusetts, following the West Virginia Supreme Court and the Appellate Court of Illinois, have concluded that the

privilege is narrow but absolute.[1]  Regarding its scope, the Massachusetts court held that the absolute privilege covers "a judge's mental impression and thought processes in reaching a judicial decision, whether harbored internally or memorialized in other nonpublic materials." 972 N.E.2d at 1033.  It held that "[t]he privilege also protects confidential communication among judges and between judges and court staff made in the course of and related to their deliberative processes in particular cases." *Id.*  The privilege was held to not cover "a judge's memory of nondeliberative events in connection with cases in which the judge participated." *Id.*  Neither was it held to shield a judge from "inquiries into whether the judge was subjected to improper extraneous influences or *ex parte* communications during the deliberative process." *Id.* (internal quotation marks omitted).

Conversely, the United States Court of Appeals for the Eleventh Circuit has held that the judicial deliberative privilege is not absolute, but qualified.  In support of its 1986 decision, the Eleventh Circuit cited *United States v. Nixon*, 418 U.S. 683 (1974), in which the Supreme Court declined to recognize the President's immunity from judicial process as absolute.  The Eleventh Circuit noted that, because the judicial privilege "aris[es] from similar constitutional underpinnings" as the executive privilege, it "shares similar limitations and restrictions." *Matter of Certain Complaints Under Investigation by an Investigating Committee of the Judicial Council of the Eleventh Circuit*, 783 F.2d 1488, 1521 (11th Cir. 1896), cert. denied, 477 U.S. 904 (1986).  The court further noted that "[l]ike any testimonial privilege, the judicial

---

[1]  "In light of the important interests served by the recognition of a judicial deliberative privilege, as discussed, *supra*, we agree with the Illinois Appeals Court, *Thomas v. Page*, [937 N.E.2d 483, 490-91 (Ill. App. Ct. 2005)], and the West Virginia Supreme Court, *State ex rel. Kaufman v. Zakaib*, [535 S.E.2d 727, 735 (W. Va. 2000)], that the best approach is to consider this privilege narrowly tailored but absolute." 972 N.E.2d at 1033.

privilege must be harmonized with the principle that 'the public … has a right to every man's evidence.'" *Id.* (*quoting United States v. Bryan*, 339 U.S. 323, 331 (1950)).

According to the Eleventh Circuit's decision, whether a plaintiff can override the judicial privilege turns on: "the importance of the inquiry for which the privileged information is sought; the relevance of that information to its inquiry; and the difficulty of obtaining the desired information through alternative means." 783 F.2d at 1522. Considering these factors, a court "then must weigh the investigating party's demonstrated need for the information against the degree of intrusion upon the confidentiality of privileged communications necessary to satisfy that need." *Id.*

### III.   The Plaintiff's Response

Plaintiff Harris concedes that, in light of Judge House's affidavit, the subpoena relating to the production of notes and/or files is moot. Thus, the remaining issue is whether Judge House will be compelled to provide deposition testimony. Harris identifies two issues he would like to address through a deposition. The first is the trial scheduling practice in Clay County which, he alleges, bears on his Sixth Amendment Speedy Trial Clause claim. The second issue concerns possible *ex parte* communications prior to plaintiff's final trial date and the dismissal of his charges asserted against him.

Regarding the circuit court's practice of scheduling matters for trial, plaintiff represents that he has already obtained the deposition testimony from a Commonwealth's Attorney and Assistant Commonwealth's Attorney. Both witnesses acknowledge that Clay County has a policy of only scheduling criminal trials during three months of the year. Plaintiff wishes to depose Judge House to determine how this policy affected his scheduling of matters, and about the lack of procedural safeguards in Clay County to monitor the length of incarceration of pre-

-4-

trial detainees.   Plaintiff stated at the hearing that such a deposition is necessary under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978), to establish that the scheduling procedure is a policy or custom in Clay County giving rise to liability for that entity.

The second matter (i.e., alleged *ex parte* communications) apparently bears on the reason for plaintiff's charges being dismissed with prejudice a mere seven-minutes after the trial proceedings were scheduled to begin.[2]  Although there is no factual support for his claim, Harris contends that this sequence of events was highly suspect, and that he would like to question Judge House regarding potential *ex parte* communications prior to the start of the trial which might explain the unusual swiftness with which his charges were dismissed.  Plaintiff concedes that testimony on this subject may invade deliberative matters, but that such information is "necessary for [p]laintiff's claims relating to [his] prolonged incarceration waiting for trial." Plaintiff's Response at 7.

### IV.    Analysis

Plaintiff seeks three types of testimony from Judge House.  The first is nondeliberative testimony about the scheduling of criminal trials in Clay County.  The second concerns nondeliberative testimony about whether Judge House had any *ex parte* communication regarding plaintiff's case.  The third is deliberative testimony, related to the *ex parte* communication, regarding why Judge House dismissed plaintiff's charges.

---

[2]  According to plaintiff, on the day his trial was set to begin, the Commonwealth's Attorney stated on the record that "I haven't seen any witnesses for the Commonwealth in the courtroom." Plaintiff's Response at 7.  At that time, defense counsel moved for dismissal of charges.  Without any discussion, and over no objection from the state, Judge House dismissed plaintiff's charges with prejudice.  Plaintiff claims this was particularly odd given the length of his incarceration pending trial and because all of the Commonwealth's witnesses had been subpoenaed to appear.

As an initial matter, Harris has not made the necessary showing to overcome the judicial privilege regarding deliberative matters.  And regarding nondeliberative matters, Harris has not shown a particularized need for the testimony of Judge House, in lieu of other information and testimony on the topics in issue.

If the judicial deliberative privilege is absolute, Judge House cannot be compelled to testify concerning why he dismissed plaintiff's charges.  However, if the privilege is qualified, Harris must show that the importance of the information sough and the difficulty of obtaining it from other sources overrides the confidentiality interests.  Here, Harris alleges that he needs the deposition testimony to support his claim of prolonged incarceration.  While the information sought may be relevant and important, these factors do not outweigh the confidentiality interests in judicial deliberation.  Further, the plaintiff is incorrect in asserting that the circumstances surrounding the dismissal of his case are irregular.  When a defense attorney makes a motion in open court to dismiss the charges against his client and the prosecution does not oppose the motion, it is not unusual or "irregular" for a judge to grant the requested relief.  Additionally, the plaintiff may question other witnesses regarding the Commonwealth's failure to move for a continuance when its witnesses did not appear as scheduled.  But it will not advance the case to obtain Judge House's speculation on this point. It is also noteworthy that Judge House is not a defendant in this action, and the plaintiff's Complaint makes no allegation of judicial misconduct.  Based on the foregoing, the protection of judicial deliberative immunity shields Judge House, regardless of whether the protection is qualified or absolute.

The second question is whether Judge House should be required to testify regarding nondeliberative matters, including Clay County's criminal trial scheduling practices and any

possible *ex parte* communication.  A testimonial privilege does not protect a judge from being called to testify about nondeliberative events at a previous trial over which he presided.  *People v. Beilke*, 232 P.3d 146, 152 (Colo. App. 2009) (citing *People v. Drake*, 841 P.2d 364, 368 (Colo. App. 1992)).  But while "the public … has a right to every man's evidence,'" *United States v. Bryan*, 339 U.S. 323, 331 (1950), there remains a general policy interest against compelling a judge to testify regarding a case over which he presided.  As explained in *People v. Drake*:

> [G]iven the weight … which a jury might accord [to] such evidence and given the judge's other duties, we view the practice of [judges testifying] as one which should be sparingly used and only when the proponent of the evidence shows the judge's testimony is not only relevant but also necessary to prove a material element of the case.

841 P.2d at 368.

Regarding scheduling procedures, counsel for Judge House indicated during the hearing that scheduling practices for the 41st Judicial Circuit (which includes Clay County) are set out in a 1994 order signed by then-Chief Justice Robert Stephens.  If plaintiff would like evidence regarding the length of time before defendants in Clay County reach trial, he has access to this order.  He may also review and obtain copies of the court's public docket regarding case filings and trial dates.  Such objective evidence would be of greater relevance than the informed, but nonetheless subjective, beliefs of Judge House.

Regarding *ex parte* communication, if plaintiff believes that Judge House was in contact with other individuals involved in the alleged conspiracy against him, he has the opportunity to depose those individuals under oath.  Again, however, the Court notes that there are no allegation of wrongdoing regarding Judge House's action in Harris' criminal case.  Further, the plaintiff unsupported supposition that *ex parte* communication might account for

the manner in which his charges were dismissed is unlikely to bear fruit, given that the motion for dismissal was made in open court and benefitted the plaintiff.

### V.    Conclusion

Plaintiff has failed to show that Judges House's testimony is essential to any element of his claim.  Further, the information sought from Judge House -- including the scheduling practices of the Circuit Court -- is available through more direct, objective sources.  The questionable value of any evidence to be gained from the judge, coupled with the ease of access through other means, demonstrates that the importance of the request does not outweigh the confidentiality interests underlying judicial deliberative immunity or the policy reasons for disfavoring judicial testimony generally.  Accordingly, it is hereby

**ORDERED** that the movant's motion to quash [Record No. 50] is **GRANTED.**

This 26th day of August, 2016.



Signed By:

_Danny C. Reeves_  DCR

**United States District Judge**